IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LAVONDA S.,

                    Plaintiff,

          v.                                    Civil Action No.
                                                3:20-CV-0483 (DEP)
KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]


                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LACKMAN GORTON LAW FIRM        PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089


FOR DEFENDANT

SOCIAL SECURITY ADMIN.          DANIEL S. TARABELLI, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

_____

[1]      Plaintiff's complaint named Andrew M. Saul, in his official capacity as the Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi took office as the Acting Social Security Commissioner. She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(3)(c), are cross-motions for judgment on the pleadings.[2]  Oral argument was heard in connection with those motions on August 25, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is

---

[2]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:    August 31, 2021
          Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
LAVONDA S.,

                    Plaintiff,

vs.                                      3:20-CV-483

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

-----------------------------------------------------x

                *DECISION* - August 25, 2021

            the HONORABLE DAVID E. PEEBLES

        United States Magistrate Judge, Presiding


            <u>APPEARANCES</u>  (by telephone)

For Plaintiff:      LACHMAN, GORTON LAW FIRM
                    Attorneys at Law
                    1500 East Main Street
                    Endicott, NY 13761
                       BY:  PETER A. GORTON, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    15 Sudbury Street
                    Boston, MA 02203
                       BY:  DANIEL STICE TARABELLI, ESQ.


                *Eileen McDonough, RPR, CRR*
            *Official United States Court Reporter*
                    *P.O. Box 7367*
                *Syracuse, New York 13261*
                    *(315)234-8546*

*Decision - 20-cv-483 - 8/25/2021*                    2

1      THE COURT:  Let me begin my decision by thanking

2   counsel for excellent presentations.  I enjoyed working with

3   both of you, and you always thoroughly address in your

4   written and verbal submissions the issues.

5      I have before me a challenge to the decision of the

6   Commissioner of Social Security pursuant to 42, United States

7   Code, Sections 405(g) and 1383(c)(3).  In that decision the

8   Commissioner, or Acting Commissioner, found that plaintiff

9   was not disabled at relevant times, and therefore ineligible

10   for the benefits that she sought.

11      The background is as follows.  Plaintiff was born

12   in December of 1968.  She is currently 52 years of age.  She

13   was 44 years old at the time of the alleged onset of her

14   disability on May 30, 2013.

15      Plaintiff stands 5-foot 2-inches in height.  She

16   has weighed at various times between 209 and 259 pounds.  In

17   December of 2014 she underwent bariatric weight reduction

18   surgery.  Plaintiff lives in a house in Binghamton.  It

19   appears she currently lives alone, although she did at one

20   time live with her husband.

21      Plaintiff has a GED and has attended Bible College,

22   studying organizational leadership and Biblical studies.  I

23   am uncertain whether she graduated.  By my calculation she

24   may have graduated in 2019.  She was in her third year, or

25   sixth semester, in March of 2018.  While there she took four

1    courses and was in school four days per week.  Plaintiff

2    drives.  She is also a certified CNA.

3              In terms of work, plaintiff worked as a CNA, or a

4    nurse assistant, in various settings from 1993 to July or

5    August of 2013.  She also worked in the area of child care,

6    and as a private duty nurse in 2013, and as a part-time tax

7    preparer from 2010 to 2013.  While in college, she worked

8    part time as a cashier in the college cafeteria from August

9    or September 2017 forward.  Plaintiff has returned to work as

10   an overnight home health aide working approximately 16 to 32

11   hours per week, and as a call center representative working

12   37 and a half hours per week.

13             Plaintiff suffers from many physical impairments

14   that have been diagnosed over time, including fibromyalgia,

15   potential regional pain syndrome and arthritis, morbid

16   obesity, borderline diabetes, diabetic peripheral neuropathy,

17   a right shoulder issue stemming from a Workers' Compensation

18   injury on or about May 30, 2013.  MRI testing of the right

19   shoulder revealed a tiny partial tear.  She also suffers from

20   bilateral knee issues, bilateral hand issues, a small disk

21   protrusion at C5-C6 without neuro compression or stenosis.

22   Plaintiff uses a cane, although it has not been prescribed by

23   any medical provider.  Mentally plaintiff suffers from major

24   depressive disorder and post-traumatic stress disorder.

25             Plaintiff's primary care provider is family Nurse

1    Practitioner Trichelle -- she was Trichelle Kirchner.  At

2    some point she became Feheley.  But I will refer to her for

3    the sake of consistency as Nurse Practitioner Kirchner.  She

4    has seen Nurse Practitioner Kirchner since sometime in the

5    1990s.  She has also seen Dr. Owais Ahmed from 2006 to 2011;

6    rheumatologist Dr. Paul Dura from 2006 to 2016; orthopedic

7    physician Dr. Eric Seybold from February until June of 2013;

8    Dr. Shalini Bichala.  She received some knee injections twice

9    a year from Dr. Thomas VanGorder.  She was at one point

10   receiving counseling from licensed clinical social worker

11   Esther McGurrin from Family and Childrens Society.  She has

12   had multiple emergency room visits.  She has also seen

13   Physician's Assistant Aspen D'Angelo who works with Dr. Dura.

14           Medications prescribed over time to the plaintiff

15   include Gabapentin, Tizanidine, hydrocodone, Sinuprol,

16   Cymbalta, Lyrica.

17           In terms of activities of daily living, plaintiff

18   is able to shower and dress, she drives, cooks, does laundry,

19   sweeps, mops, operates a computer, walks for exercise, she

20   does some socialization, watches television, reads.  She is a

21   former smoker and marijuana user and an occasional alcohol

22   user.

23           Procedurally, plaintiff applied for Title II

24   benefits under the Act on June 10, 2013, and Title XVI

25   supplemental security income benefits on November 15, 2013,

1   both alleging an onset date of May 30, 2013.  Administrative

2   Law Judge Marie Greener conducted a hearing to address those

3   applications on April 27, 2015, and subsequently issued a

4   decision on June 5, 2015, which was unfavorable to the

5   plaintiff.

6          The Social Security Administration Appeals Council

7   denied review of that decision on October 13, 2016.  The

8   matter was remanded pursuant to an order issued by me on

9   June 12, 2017.  That was followed by an Appeals Council order

10  of remand on August 15, 2017.  A hearing was conducted on

11  March 14, 2018, by Administrative Law Judge Elizabeth

12  Koennecke, who subsequently issued an unfavorable decision on

13  April 26, 2018.  The matter was subsequently remanded on

14  stipulation by order issued by Magistrate Judge Therese Wiley

15  Dancks on February 28, 2019.  The Appeals Council

16  subsequently issued an order remanding on May 15, 2019 with

17  instructions.

18         A second hearing was conducted by Administrative

19  Law Judge Koennecke on February 4, 2020.  She ultimately

20  issued an unfavorable decision on February 13, 2020.  This

21  action was subsequently commenced on April 29, 2020, and is

22  timely.

23         In her decision, ALJ Koennecke applied the familiar

24  five-step sequential test for determining disability.  She

25  first noted that the plaintiff was -- the focus was on a

1    closed period between the alleged onset date of May 30, 2013,

2    and May 31, 2018, based upon her return to work.  She noted

3    plaintiff was insured through December 31, 2018.

4          She then found at step one the plaintiff had not

5    engaged in substantial gainful activity during the relevant

6    period.  She did note some earnings and those were

7    considered.

8          At step two, ALJ Koennecke concluded that plaintiff

9    suffers from severe impairments that provide more than

10   minimal limitations on her ability to perform basic work

11   functions, including fibromyalgia, herniated nucleus pulposus

12   of the cervical spine without compression, right shoulder

13   tendonitis, and diabetic peripheral neuropathy.  She noted

14   parenthetically that those were the same impairments that she

15   found severe in her earlier decision, and the Appeals Council

16   found no error at step two in its earlier decision.

17         At step three, ALJ Koennecke concluded that

18   plaintiff's conditions do not meet or medically equal any of

19   the listed presumptively disabling conditions set forth in

20   the Commissioner's regulations, specifically considering

21   listings 1.04 and 11.14.

22         The Administrative Law Judge then concluded that on

23   the evidence in the record that plaintiff retains the

24   residual functional capacity, or RFC, to perform light work,

25   except she can maintain a sitting or standing position for

1  about 45 minutes at one time before needing to assume a new

2  position.  Applying that RFC finding, she concluded at step

3  four that plaintiff is incapable of performing her past

4  relevant work and proceeded to step five.

5          At step five, ALJ Koennecke noted that if plaintiff

6  were capable of performing a full range of light work, a

7  finding of no disability would be compelled by the

8  Medical-Vocational Guidelines set forth in the regulations,

9  or so-called grids, and specifically Grid Rules 202.14 and

10  202.21.

11         With the assistance of testimony from a vocational

12  expert, ALJ Koennecke next concluded that plaintiff is

13  capable of performing available work in the national economy

14  and cited representative positions as a work tickets

15  distributor, a recreation aide, and a furniture rental

16  consultant, which parenthetically she noted is also the same

17  as a furniture sales consultant, and thus concluded the

18  plaintiff was not disabled.

19         My function, as you know, is limited and the

20  standard applied is extremely deferential.  I must determine

21  whether correct legal principles were applied and the

22  resulting determination is supported by substantial evidence,

23  which is defined as such relevant evidence as a reasonable

24  mind would find sufficient to support a conclusion.

25         The Second Circuit has made it very clear,

1  including in *Brault versus Social Security Administration*

2  *Commissioner*, 683 F.3d 443, from 2012, that the standard is

3  exceedingly deferential, more so than the clearly erroneous

4  standard that we as lawyers are familiar with.  Under the

5  standard, once an ALJ finds a fact, that fact can be rejected

6  only if a reasonable factfinder would have to conclude

7  otherwise.

8          Plaintiff in her brief raises multiple contentions.

9  She addresses what she refers to as more or less the

10 hostility of the Administrative Law Judge to fibromyalgia

11 cases.  And I understand the argument, especially from our

12 oral presentation, to mean that she has a pattern according

13 to the plaintiff of requiring objective evidence in

14 fibromyalgia cases in contravention of governing case law and

15 Social Security rulings.

16         The second contention is that the ALJ failed to

17 properly assess Dr. Dura's opinion as a treating source, and

18 the focus of that, of course, is on the ability to remain on

19 task and absenteeism.

20         The third is the failure to explain the weight

21 given to Nurse Practitioner Kirchner's opinion and if parts

22 were rejected.

23         And the fourth contention is the failure to

24 consider the evidence of the plaintiff being off task and

25 absent and characterizes the opinions of Dr. Dura and Nurse

1  Practitioner Kirchner as uncontradicted.

2          The fifth is the improper reliance on Dr. Jenouri's

3  opinion.

4          And the sixth is that the errors affect the

5  residual functional capacity finding; therefore, the

6  hypothetical presented to the vocational expert, and

7  therefore the step-five determination, is defective.

8          A couple of things for context.  My remand in June

9  of 2017 was based on, one, the failure to consider altogether

10  Nurse Practitioner Kirchner's opinion and explain the parts

11  rejected and the basis and, two, failure to consider

12  Dr. Dura's opinion and the need to evaluate and go through

13  the factors governing and informing the treating source

14  analysis.  The Appeals Council's remand in May of 2019 was

15  premised upon the alleged failure to evaluate Dr. Dura's

16  opinion, which is the opinion from June 29, 2015, that

17  appears at 20F, and the argument that the residual functional

18  capacity was not supported because there was no specific

19  weight given to any opinion regarding specific functional

20  limitations.

21          Starting first with fibromyalgia in general.

22  First, although plaintiff's counsel indicated that he was not

23  raising per se a bias argument to the extent it is considered

24  as deemed to have been raised, there's no question that a

25  claimant is entitled to an unbiased, impartial Administrative

1    Law Judge.  There is, however, a presumption of fairness.

2           In this case there is no proof of actual bias on

3    the part of ALJ Koennecke against fibromyalgia or its

4    claimants.  In any event, any argument of bias is waived

5    since it was not presented to the Agency at the earliest

6    opportunity.  20 CFR Sections 404.940 and 416.1440*; Schneider*

7    *versus Berryhill,* 2018 WL 3840824 (M.D. Pa. August 13, 2018);

8    *Woodward versus Commissioner of Social Security*, 2017 WL

9    1190951 (E.D. Mich. March 31, 2017); and *Morris versus*

10   *Colvin,* 2015 WL 3466109 (N.D. Fla. June 1, 2015).

11          The argument that I really believe is being raised

12   is the focus on the lack of -- the alleged focus by the

13   Administrative Law Judge on the lack of objective evidence.

14   Fibromyalgia is the subject of Social Security Ruling 12-2p,

15   and it is also the subject of the Second Circuit's decision

16   in *Green-Younger versus Barnhart,* 335 F.3d 99 (2d Cir. 2003).

17   Both make it clear that fibromyalgia is by definition and by

18   its very nature an elusive impairment that doesn't always

19   present itself with objective evidence.  There are ways to

20   diagnosis it, as specified in Social Security Ruling 12-2p,

21   but there is a distinction, and it's not even a subtle

22   distinction, between requiring objective evidence to support

23   the diagnosis versus objective evidence to gauge the

24   resulting limitations.

25          The distinction is noted in SSR 12-2p.  In that

1   ruling the Agency has noted, quote, "As with any claim for

2   disability benefits, before we find that a person with an MDI

3   of FM is disabled, we must ensure there is sufficient

4   objective evidence to support a finding that the person's

5   impairment(s) so limits the person's functional abilities

6   that it precludes him or her from performing any substantial

7   gainful activity."

8            Administrative Law Judge Koennecke recognized this

9   distinction.  In her decision at the bottom of page 1153 and

10  the top of 1154, she noted the following:  "I am aware

11  fibromyalgia is a diagnosis rendered without any objective

12  evidence.  It is a subjective condition and this claimant,

13  just as every other claimant who alleges this impairment,

14  subjectively reports disabling pain with disabling functional

15  limitations.  However, the Agency has not directed that the

16  diagnosis alone equals a finding of disability, rather it is

17  up to the undersigned to determine how severe her

18  fibromyalgia is.  Because it is a condition that results in

19  complaints of widespread pain affecting function (in this

20  case testimony that she has excruciating pain throughout her

21  body every day), it necessarily affects findings reported on

22  examination, such as reduced strength due to pain, reduced

23  range of motion due to pain, limited movement due to pain,

24  antalgic gait, muscle bulk versus muscle wasting.  Therefore,

25  there is objective evidence that can inform the undersigned

1  and fulfill the requirement to determine the severity of her

2  fibromyalgia.  This is consistent with the Agency's

3  directives for evaluating fibromyalgia.  Otherwise, if I am

4  precluded from evaluating any objective evidence, the

5  diagnosis alone does equate to a finding of disability.  The

6  objective evidence detained herein" -- I think that might be

7  a typographical error -- "detained herein does not support

8  such a finding in this case.  Gait issues, and muscle wasting

9  and other findings are not present from the record."

10         The distinction that we're discussing here has been

11 recognized by other courts, by the First Circuit in the

12 context of other types of cases, and in that case ERISA, a

13 claim for long-term disability benefits in *Boardman versus*

14 *the Prudential Insurance Company America*, 337 F.3d 9, n. 5

15 (1st Cir. 2003).  And the distinction is also noted by the

16 Seventh Circuit in *Williams versus Aetna Life Insurance*

17 *Company*, another ERISA case based on application for

18 long-term disability benefits, 509 F.3d 317 at 322 (7th Cir.

19 2007).

20         In my view, the Administrative Law Judge properly

21 considered the available objective evidence to evaluate the

22 effect of plaintiff's fibromyalgia on her ability to perform

23 such functions as walking, bending, reaching, lifting.  The

24 Administrative Law Judge considered, as Commissioner's

25 counsel argued, plaintiff's extensive walking activities, tax

1   preparation, missionary trip to Poland, the fact that she

2   went to college full time and worked part time at the same

3   time, her extensive activities of daily living, and properly

4   drew inferences from those objective factors to come up with

5   the residual functional capacity finding.

6          She also, of course, properly relied on the

7   opinion, the medical source opinion of consultative examiner

8   Dr. Jenouri, who noted mild restrictions in lifting, that's

9   at 377, something that is totally consistent with light work.

10  *Randy L.B.*, 2019 WL 2210596 (N.D.N.Y. May 22, 2019).  So I

11  find no error in the evaluation of objective evidence to

12  determine the extent of plaintiff's limitations

13  notwithstanding her fibromyalgia diagnosis.

14         The next argument concerns the opinion of Dr. Paul

15  Dura, who is a treating source.  Dr. Dura indicated or gave

16  the response to a questionnaire on June 29, 2015, that

17  appears at 735 to 736 of the Administrative Transcript,

18  finding that plaintiff would be off task more than 15 percent

19  but less than 20 percent, she would be absent two days per

20  month, she can sit approximately six hours out of an

21  eight-hour day with breaks.  The treating source also gave

22  another opinion on February 15, 2018, that's at page 1101 to

23  1104, indicating that plaintiff's condition was about the

24  same and the limitations were about the same as previously

25  noted.  In that medical source statement, he stated, "I last

1   personally evaluated the patient on February 19, 2016, so

2   certainly I don't remember her well.  She did not keep a

3   scheduled follow-up visit with me on October 25, 2017;

4   however, she was evaluated by the physician's assistant in

5   our office on October 26, 2017.  Based on my review of that

6   office note, it would seem to me that her condition is about

7   the same with the same limitations."

8           The Administrative Law Judge discussed Dr. Dura's

9   opinions on page 1156 and gave them little weight.  My

10  decision and a remand was based on a total failure to address

11  Dr. Dura's opinions.  Dr. Dura clearly qualifies as a

12  treating source.  This matter is governed by the former

13  regulations since the applications were made prior to March

14  of 2017.  Under those regulations ordinarily the opinion of a

15  treating physician regarding the nature and severity of an

16  impairment is entitled to considerable deference, provided it

17  is supported by medically acceptable clinical and laboratory

18  diagnostic techniques and is not inconsistent with other

19  substantial evidence.  *Veino v. Barnhart,* 312 F.3d 578, 588

20  (2d Cir. 2002).  Such opinions are not controlling, however,

21  if they are contrary to other substantial evidence in the

22  record, including the opinions of other medical experts.

23  And, of course, where there are conflicts in the form of

24  contradictory medical evidence, the resolution of such

25  conflicts is properly entrusted to the Commissioner under

1    *Veino*.

2              The treating source rule also provides that when

3    controlling weight is not given to a treating source's

4    opinions, the ALJ must apply several factors, so-called

5    *Burgess* factors, and give an indication of what weight, if

6    any, is given to the opinion and why.

7              Of course, in *Estrella versus Berryhill*, 925 F.3d

8    90 (2d Cir. 2019), the Second Circuit realistically noted

9    that very few of the Administrative Law Judge's decisions go

10   through a rote analysis of the *Burgess* factors and found that

11   that is not reversible error if a searching review of the

12   record convinces the Court that the treating source rule was

13   followed.

14             In this case, although I would have liked a more

15   fulsome discussion perhaps of Dr. Dura's opinions, I believe

16   that the Administrative Law Judge did explain the reasons for

17   giving little weight to Dr. Dura's opinions.  One of the

18   reasons cited was that Dr. Dura stated the limitations

19   existed dating back to October 2010.  During a significant

20   part of that period she was working.  Dr. Dura also failed to

21   respond to a request for clarification on his report of

22   reflex sympathetic dystrophy and complex regional pain

23   syndrome, and the fact that plaintiff herself admitted she

24   did not see Dr. Dura very often.

25             I think that based on the discussion, the treating

1    source rule was not abrogated.  And I note that the fact that

2    the plaintiff worked during the period of time when Dr. Dura

3    said she was disabled is a relevant factor.  *Johnston versus*

4    *Berryhill*, 2017 WL 1738037 (Dist. Kan. May 4, 2017).  So I

5    find no violation of the treatment source rule and the

6    consideration of Dr. Dura's opinion.

7           When it comes to the opinions of Nurse Practitioner

8    Kirchner, she issued opinions on March 13, 2014, at 443 to

9    444; and October 21, 2017, 1042 to 1044.  They're extremely

10   restrictive but they appear to be based on plaintiff's

11   subjective statements, both containing the caveat as follows,

12   "Patient has history of fibromyalgia.  This is managed by

13   Regional Rheumatology, Dr. Dura.  The information provided is

14   based on what patient states she can do."  And the similar

15   caveat -- that's at page 444.  A similar caveat appears at

16   page 1044.

17          It's certainly a proper basis for giving less

18   weight to the opinion of Nurse Practitioner Kirchner.  Of

19   course, under the former regulations she's not an acceptable

20   medical source.  Her opinions are discussed by the

21   Administrative Law Judge at 1155 to 1156 and given no weight.

22   There is no indication here that the opinions are based on

23   the nurse practitioner's own medical judgment; it's clear

24   that she defers to Dr. Dura who was treating her

25   fibromyalgia, so they have little or no value and were

1   properly discounted.

2          I do acknowledge that in my instructions I wanted a

3   fuller explanation of Nurse Practitioner Kirchner's opinion

4   and why it was being discounted.  I think it's in there.  I

5   note that that instruction is not included in the Appeal

6   Council's second remand order.  So it's addressed, maybe not

7   perfectly, but I cannot say that a reasonable factfinder

8   would have to afford more weight to Nurse Practitioner

9   Kirchner's opinions, so I find no error.

10          In terms of off task and absenteeism, that, of

11  course, brings into play the residual functional capacity of

12  the plaintiff, which is pivotal to the finding of no

13  disability.  A claimant's RFC represents a finding that the

14  range of tasks she is capable of performing notwithstanding

15  her impairment ordinarily represents a maximum ability to

16  perform sustained work activities in an ordinary setting on a

17  regular and continuing basis, meaning eight hours a day for

18  five days a week, or an equivalent schedule.  *Tankisi versus*

19  *Commissioner of Social Security*, 521 Fed App'x 29, at 33 (2d

20  Cir. 2013).  An RFC determination, of course, is informed by

21  consideration of all of the relevant medical and other

22  evidence.

23          In this case, Dr. Dura, as I stated earlier, opined

24  that the plaintiff would be off task 15 to 33 percent of the

25  time, at page 735, 736, and absent two days per month, and

1    that she would have good and bad days.  On February 15, 2018,

2    he opined she would be off task 15 to 20 percent and absent

3    two times per month, at 1101 to 1103, and had good and bad

4    days.  Nurse Practitioner Kirchner stated the need to take

5    frequent unscheduled breaks, at 444.  Dr. Jenouri did not

6    mention any limitation regarding schedule or absenteeism.

7         I note that an RFC determination need only be based

8    on substantial credible medical evidence.  The Administrative

9    Law Judge properly gave more weight to Dr. Dura's opinions

10   and no weight to Nurse Practitioner Kirchner, which leaves,

11   one could argue, a void.  But the cases are clear that there

12   is no need for a medical opinion supporting of every

13   limitation in an RFC determination.  That was noted by the

14   Second Circuit in *Tankisi*, a case that I cited a moment ago,

15   as well as *Monroe v. Commissioner of Social Security*, 676

16   Fed. Appx. 5 (2d Cir. 2013), and *Moxham versus Commissioner*

17   *of Social Security*, 2018 WL 1175210 (N.D.N.Y. March 5, 2018).

18        I note, of course, as a backdrop that it is

19   plaintiff's burden to show her limitations up through step

20   four, and that includes the RFC finding.  I think this may be

21   considered a close case, but in this instance the

22   Administrative Law Judge in rejecting absenteeism and off

23   task relied on the activities of daily living, including

24   part-time and full-time employment, inconsistencies between

25   plaintiff's claims and treatment records.  It is clear that

1  she was able to attend college four days per week, taking

2  four courses, and working part time.  There is no indication

3  that that was impeded by excessive absenteeism or being off

4  task.

5          Given the deferential standard that I'm applying, I

6  am unable to say that the residual functional capacity

7  determination was not supported by substantial evidence.  So

8  in conclusion, I find no error in formulating the residual

9  functional capacity.  Substantial evidence supports it in its

10 entirety.  At step five the Commissioner carried her burden

11 based on the vocational expert's testimony and presented with

12 the hypothetical that was based on the residual functional

13 capacity finding.

14         So I will grant judgment on the pleadings to the

15 defendant and order dismissal of plaintiff's complaint.

16         Thank you both.  Enjoy the rest of your summer.

17              *              *              *

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.

_____
*Eileen McDonough*

EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter